The next case this morning is 5210393 People v. Webb. Arguing for the defendant appellant is Richard Whitney. Arguing for the appellee state is David Friedland. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. All right, good morning gentlemen. Good morning. Mr. Whitney, are you ready to so? Thank you. Good morning, your honors. May it please the court. We lost, we lost Mr. I'm sorry, your honor. Do I keep my video on? I apologize. Yes, yes. Okay, thank you. I'm sorry, Mr. Whitney. Go ahead. All right, that's fine. Good morning, your honors. May it please the court counsel. Richard Whitney for defendant appellant John W. Webb. Your honors, in this de novo review, namely that he was denied his right to the effective assistance of trial counsel, and that claim is based on a single blunder, a sin of omission by trial attorney John Stobbs, but that one error, if you'll forgive me, coining a new term of art was a whopper. It was glaring, it was egregious, and it was a game changer. This occurred when Stobbs allowed state witness Jacqueline Hunziker, a forensic interviewer with the Madison County Child Advocacy Center, to state without objection, quote, I also had information that John Webb has a criminal history that he uses alcohol and crack cocaine. Your honors, an objectively reasonable defense attorney would have leapt to his feet and said objection, hearsay, move to strike, sidebar, your honor, and then requested a mistrial. But none of that happened. This was inexplicable and inexcusable. It cannot possibly be attributed to any coherent trial strategy, as it was damaging in the extreme, and it was contrary to the strategy that Stobbs had already adopted, a very sensible strategy of keeping out any evidence of Mr. Webb's prior bad acts, criminal history, or drug use. Our courts have long recognized how damaging evidence of prior crimes or unrelated bad acts can be. That is why our evidence barred the admission of such evidence, except under very strictly limited purposes, under Rules of Evidence 403 and especially 404. As our Supreme Court colorfully put it in People v. Montgomery, a defendant is a dead duck once he is on trial before a jury, and you present a record that he was convicted. And to put it mildly, there is no conceivable upside to allowing a jury to be told that a defendant is a crack cocaine user. It's not as if any juror is going to conclude, oh, he was a crack cocaine user, guess he couldn't possibly harm a child. It is common knowledge that crack cocaine is illegal, highly addicting, and is associated with further criminal and unhinged behavior. The only reasonable conclusion to draw from this is that Attorney Stobbs fell asleep at the switch. He may have only done so once, but that was all it took. This plainly fell below an objective standard of reasonableness, satisfying the first prong of the Strickland test. Really, the only debatable question here is whether Mr. Webb was prejudiced by this error. And on that point, it bears emphasizing that Mr. Webb was prejudiced by the fact that absent this error, the evidence would have been insufficient to sustain the conviction, or even that a different outcome was likely. Under the case law cited in our brief, including this court's opinion in People v. Loeffler, a defendant need only show that it is plausible that the result would have been different absent trial counsel's errors. And in this case, with the evidence being as closely balanced as it was, hinging primarily on the testimony of a seven-year-old child, whose account was riddled with inconsistencies as described in the opening brief, thus creating some reasons to doubt her claims, telling the jury that Mr. Webb was a crack cocaine user with a criminal history gave it more reason to doubt his protestations of innocence and overlook the inconsistencies in the minor child's account. For these reasons, Mr. Webb asked this court to vacate his convictions and remand this cause for a new trial so that he may receive a fair trial with the effective assistance of counsel, not asking to overturn the conviction, vacate it, let him have another go at this with effective assistance of counsel. Really, that's the sum and substance of this case, Your Honors. While it's unusual for me to forego all of my time in an oral argument, what this really comes down to is literally a judgment by this court as to whether or not the case was closely balanced enough such that, absent these errors, a different result was plausible. I submit that it is, the reason stated, and go into considerable detail in the opening brief in particular about that. So with that, unless there's any other questions, I'll conclude my opening remarks and save the rest for rebuttal. Justice Moore? No questions. Justice Ryan? Mr. Wynne, do you think that the reference to the crack cocaine or the fact that the reference to a prior criminal record or both is the problem? Because my reading of the record is this was a brief statement in a three-day trial with over 300 pages of transcripts. This brief mention doesn't hardly seem like a matter of trial strategy to not draw attention to it and gloss over it rather than make an objection and bring the jury's attention to it. Well, I understand Your Honor's concerns there because, yeah, there is always the thing, well, you can't unring the bell, right? And there is something maybe to be said for that, that, you know, you object, you call attention to it. On the other hand, we presume that juries follow court's instructions and that if the objection is hearsay and the jury hears that and the jury hears the court say you are to disregard those ground rules set before the trial as well as the rules of evidence, then I think the presumption is the jury is going to follow that and is likely to conclude, well, we should follow that because there was probably no real basis for it or there was some sort of problem with it. So I think on balance, the error being as egregious as it was, that it would have been clearly better to have objected to objected, got the motion to strike granted, tell the jury you were not to consider this, and then the presumption is the jury would follow that. In addition, although I didn't put great weight on it because courts have a great deal of discretion about whether to grant a mistrial, I think that there is at least a very strong probability the court would have granted it if Mr. Hobbs had asked for a mistrial here because the error was so egregious and it so clearly violated the ground rules that had been agreed to by the parties going into this trial. So when you consider all of these things together, including the more than fair prospect that a mistrial would have been granted, then I think that we cannot really attribute this to trial to strike. He should have asked for mistrial. Thank you. Thank you, Your Honor. Okay. Thank you, Mr. Whitney. Mr. Friedland. Thank you, Your Honor. Good morning, Your Honors. Counsel, my name is David Friedland. I represent the people of the state of Illinois at police in this matter. May it please the court, Counsel. The defendant's wife in this case walked in on him abusing their grandchild. Your Honors can quickly dispose of this case on the prejudice prong. Defendant, in his brief, has tried to portray this case as a closely balanced he said, she said type of case and it just simply isn't. You have an eyewitness to the abuse. There's no question because of the defendant's own statements. He was on top. He admitted being on top of her. He said in the squad car, it was wrong for me to be on top of her. I shouldn't have had my leg on top of her. So there's no question that he was on top of his granddaughter, the victim, at 3.30 in the morning. The only question in this case is whether the jury was going to believe the grandmother's testimony that she saw what she saw because the grandmother and the victim testified consistently. Defense counsel attempted to portray the grandmother as having not seen what that she was groggy and that she was sleepy due to medications and the jury rejected that argument and properly as there's a quite a difference between talking in one as a girl on the couch and being on top of her riding her like a mechanical bull. There's no yes. How old was she at the time of the incident and how old was she at the time of the trial? The time of the time of trial, she testified she was seven. Which incident are you referring to? She was five at the the 2019 incident. I can't tell you exactly. I'd have to do check her birthday as to whether or not since there was no time frame about the penis to mouth predatory criminal sexual assault. I can't give you that information sometime between 2019-2020. I believe she was six at the time of the August 7, 2020 incident. To go back to what counsel was pointing out, the victim was incredibly consistent. In 2019, if you look at People's Exhibit 8, the victim's mother told the hospital personnel that she had been abused as a child and that she made sure that her daughter knew to report any inappropriate touching. The daughter did. The two days after or a day after she had been abused, the first time where he was just touching her on the front and back, she told her mom. They go to the hospital. They go to the police. Incredulously, no charges were brought. Obviously, what happens as is typical, the abuse escalates. Sometime after that event, you have the penis to mouth. He's abusing her in the bathroom and she was consistent about that. She testified that he put her penis in the mouth. She actually clarified on redirect that, no, no, I didn't kiss it. He made me put his penis in my mouth. She told the doctor that and she told at the hospital in September, I believe September of 2020. She also told the forensic interviewer in the August 7, 2020, three consistent statements of the penis to mouth interaction. Her testimony essentially corroborates the grandmother's testimony. If we have to disbelieve the grandmother that she didn't see what she said, her testimony is corroborated by the daughter's earlier disclosure. Here, the victim is saying, this man is abusing me. No charges are brought. She incredulously is allowed back. If you're the defendant, I just point out, if you've been falsely accused by this girl that she's falsely accused of sexually abusing you, what is he doing at 3.30 in the morning tucking her in? He should be nowhere near that victim. Your honors know that's because he was abusing her. That's because the grandmother saw what she saw. And that's because the victim reported three times or repeatedly, consistently that this defendant was abusing her. And to go to the complete, this isn't the case where the defendant was convicted because of that innocuous statement, because of the complaint of error here. As your honor, Justice Vaughn pointed out, this is a very, very brief, innocuous statement. And I'd like to point out the circumstances under which it was made. This is made by the forensic interviewer on the August 7th, 2020 forensic examiner. And she was the second witness. Her testimony is essentially setting up the interview. How do you conduct a child-centered interview? Open-ended questions. What was the room like? These somewhat innocuous questions. And she's the second person to have gone over that. Immediately preceding her was the first forensic child interview from February of 2019. All the same questions, all the same stuff. You get to the second one. One of two things happened, as counsel points out. Either defense counsel fell asleep at the wheel for a momentary, one small moment. Or he made, as your honor pointed out, he made a strategic choice not to highlight this. This wasn't in response to any state questions. And I'm going to read the question because it's telling where the complaint of statement was. So what information did you have going into the interview? So the information that I had going into this interview is what was reported. The allegations that J.T. and her siblings were being watched by their grandmother and their step-grandfather. And that J.T.'s grandmother caught the step-grandfather doing pelvic thrusts on J.T. I also had information that John Webb has a criminal history that he uses alcohol and crack cocaine. I also had knowledge that J.T. had been interviewed at the center before. Next question, were you aware at the time if J.T. had any other siblings? Answer, I was. That statement was buried in a somewhat innocuous and proper lengthy answer given by the forensic interviewer. It wasn't followed up by the prosecutor. It wasn't argued at any other time. They immediately went into the other siblings. Nobody's rested on it. Certainly, either it's possible that the counsel missed it because it was so buried, it wasn't the first, it wasn't the last statement in that paragraph for that answer. Or as your honor pointed out, drawing attention to it would certainly have highlighted the crack cocaine user. And counsel suggests that a mistrial was going to, that this would have merited a mistrial. This certainly doesn't merit a mistrial. If anything, a limiting instruction or a choose to disregard that or an instruction that they'll disregard that. But this certainly doesn't rise to the level of prejudice, nor can, am I conceding that the counsel was deficient for failing to object that right there. Again, buried in that statement, why draw attention to it? But regardless, your honors can resolve this case solely on the prejudice prong. This isn't a case where the defendant's credibility or drug use or he was convicted because he was a crack cocaine user uses alcohol. And notably, the interviewer said criminal history. She didn't say convictions. There's no evidence that have any prior, as counsel argued, bad acts, nothing other than, as far as the criminal history part of the argument, there isn't any evidence of his convictions or any or how lengthy or anything it was. It wasn't argued, nobody brought to it. It was a minimal, innocuous comment that had no impact whatsoever on this trial. As the investigating officer said incredulously, in my opinion, these cases are often occur in the shadows and they often aren't charged as it wasn't in 2019. In this case, I believe the officer testified unless there's an eyewitness or some corroborating evidence. Well, we have that here. It's a rarity. What better corroborative evidence than the defendant's own wife testifying and seeing what she observed. You have to disregard her testimony entirely and believe that there is a conspiracy against this defendant and there just isn't. There's been no motive to fabricate on behalf of the family. There's been no motive to fabricate on behalf of the victim who's just been consistent that the defendant had been abusing her. As such, your honors, this comment certainly does not rise to the effect of ineffective assistance of counsel and we would ask that your honors affirm the defendant's convictions. And with that, I'll take any questions from the panel. Justice Moore? No other questions. Justice Vaughn? No questions, thank you. All right, thank you, Mr. Friedland. Thank you, your honors. Mr. Whitney, rebuttal. Thank you, your honors. First of all, with respect to the argument that there were two witnesses to these occurrences, Ms. Vanita McKnight, Mr. Webb's ex-wife, only claimed to have witnessed one of the incidents, the so-called riding incident. And that testimony was when she was admittedly in a drug-induced haze. She took 10 different pills that night and that made her groggy and sleepy. And that is why she took the child into the bathroom after the incident to try to get a confirmation about whether she saw what she thought she had seen. So this was not exactly clear-cut supporting or corroborating evidence from an eyewitness. It is what it is. It obviously was testimony, and it didn't address the more serious charges. In addition, Ms. McKnight, Vanita McKnight, also didn't believe that the first incident had occurred. After it occurred, she said she just had the child sleep with her and they went back to their prior relationship where the child was being babysat by the same couple. So clearly she disbelieved it. So there were reasons why no prosecution was brought with respect to the incident. The evidence simply really wasn't there. As far as Mr. Webb, while he was in the police car admitting that he had his leg on top of her, he also said during this and his protestations of innocence, as recorded, was that the JT and the other children were sleeping on a couch. She had fallen off. He had gone to put her back in, and that's why he was tucking her in. And he even made a comment, well, he should have just let her fall off the couch. So granted, again, it is what it is. The court can review the video. The court can review the evidence. I'm sure as it is going to do anyway. But we cannot say that the evidence from the police vehicle recording was incriminating. It was mostly exonerating in terms of Mr. Webb, while he was alone in the police vehicle for most of that time. And who knows if he knew he was being recorded, but he was basically protesting his innocence during most of that. Opposing counsel states that JT's story was nothing but consistent. Well, that's clearly not the case. And I'm not going to review everything written in the opening brief. I identified seven different categories of inconsistencies. They're all in the record. The court can see the record for himself. She did change her story. It was not consistent at all. First, he had his shorts on, then he didn't have his shorts on, on and on. It was not consistent. And a jury is allowed to take into account that this is a young child, obviously, and that children are prone to flights of fancy. And that doesn't necessarily mean that they're lying about the core parts of the story. But it also doesn't necessarily mean they're telling the truth either. That's why we're arguing that this was a closely balanced case. You're hinging a lot on the varying and inconsistent testimony of a five and six-year-old child is recorded in a seven-year-old child as she testified. She even admitted at trial that she did change her story about what had happened. So there are a lot of reasons to doubt. There is evidence to support. We understand that. But on balance, this was closely balanced in an era that egregious should, you know, was serious enough to have affected the outcome or at least made a different outcome plausible, which is the standard. Finally, counsel reads the question that was posed in If I heard a question, well, what information did you have going into the interview? Isn't that asking for hearsay? I think all that counsel has done is suggested, hey, maybe he should have objected sooner and, you know, and brought that out and stopped the damaging information from coming in in the first place. So, yeah, I don't think that hearing the fuller context really helps the state's argument here. If anything, I think it reinforces our conclusion counsel should have objected. So for these reasons and the reasons previously stated, we again respectfully ask this court to vacate Mr. Webb's conviction and remand this cause for a fair trial with the effective assistance of counsel. Thank you. Justice Moore, any questions? No questions. Justice Vaughn? No questions. Thank you. All right. Thank you, Mr. Whitney. Thank you, Mr. Friedland. This matter will be taken under advisement. We'll issue an order in due course.